UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MIGUEL HIDALGO HERNANDEZ,

         Petitioner,

    v.

SECRETARY KRISTI NOEM,
SECRETARY OF THE U.S.
DEPARTMENT OF HOMELAND
SECURITY, *et al.*,

         Respondents.

Case No. 2:26-cv-515-KCD-NPM

## ORDER

Petitioner Miguel Hidalgo Hernandez has filed a habeas corpus petition challenging his detention by U.S. Immigration & Customs Enforcement ("ICE"). (Doc. 1.)[1] He claims that his continued imprisonment violates the Fifth Amendment as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001). Respondents oppose the petition. (Doc. 15.) For the reasons below, the petition is **GRANTED**.

## I. Background

Hernandez, a citizen of Cuba, entered the United States in 2007 as a lawful permanent resident. (Doc. 15-1 at 8.) In early 2020, he was convicted of child abuse. (*Id.* at 9.) Following that conviction, an immigration judge

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

ordered him removed from the country. Because the Government could not effectuate his deportation, he was released on an order of supervision—a kind of conditional liberty, allowing him to remain at home so long as he followed the conditions of release. (Doc. 1-1 at 6.) But on July 24, 2025, Immigration and Customs Enforcement ("ICE") revoked that supervision and put him back behind bars. He has remained there ever since. (Doc. 15-1 at 1-2.)

In February, Hernandez filed this emergency petition for a writ of habeas corpus. (Doc. 1.) He argues his removal is not reasonably foreseeable and asks this Court to order his immediate release. (*Id.* at 9-11.)

## II. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

### III. Discussion

The Government first tries to avoid the merits entirely, arguing that two jurisdiction-stripping provisions of the Immigration and Nationality Act—8 U.S.C. §§ 1252(g) and 1252(b)(9)—block this Court from even hearing the case. (Doc. 15 at 3.) We need not spend much time on either.

The Government first claims that § 1252(g) bars review because Hernandez's plea arises from the "execution" of a removal order. But the Supreme Court has repeatedly cautioned that § 1252(g) is narrowly tailored to three discrete actions, and it does not operate as a blanket ban on habeas review for prolonged detention. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018). Indeed, if the Government's sweeping interpretation were correct, *Zadvydas*—the seminal case where the Supreme Court held it could consider a habeas challenge to unlawful, prolonged immigration detention—would have been stopped in its tracks before ever reaching the merits. The Court is satisfied it has jurisdiction to decide whether Hernandez's detention is lawful. *Zadvydas*, 533 U.S. at 688 (citing § 1252(g) yet concluding "that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention").

The Government similarly argues that 8 U.S.C. § 1252(b)(9) bars judicial review. (Doc. 15 at 5.) Not so. The Eleventh Circuit has held that § 1252(b)(9) "only affects cases that involve[] review of an order of removal."

3

*Canal A Media Holding, LLC v. United States Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1257 (11th Cir. 2020). Hernandez is not challenging his removal proceedings—he is challenging the antecedent detention. So "the Government's reliance on § 1252(b)(9) is misplaced." *Fernandez-Garcia v. U.S. Att'y Gen.*, No. 1-20-CV-23599-UU, 2021 WL 8821923, at *5 (S.D. Fla. Apr. 15, 2021).

That leaves the merits, which as noted, concern Hernandez's continued detention pending removal from the United States. (Doc. 1 at 9.)

The statutory framework for removal works like this: when a noncitizen's removal order becomes final, the government has 90 days to effectuate removal. 8 U.S.C. § 1231(a)(1)(A). During that period, detention is mandatory. *Id.* § 1231(a)(2)(A). If the 90 days pass and the noncitizen is still here, the statute gives the government a choice: release the individual on supervision or keep them detained. *Id.* § 1231(a)(6).

But as the Supreme Court explained in *Zadvydas*, the authority to detain does not stretch into infinity. To avoid serious constitutional problems, the Court read an implicit limitation into the statute: the government may detain a noncitizen only for a period "reasonably necessary" to secure his removal. 533 U.S. at 659. And to make that rule workable, the Court established a presumption. For the first six months, detention is presumptively reasonable. *Id.* at 701. After that period has passed and the

4

alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to the government to provide evidence sufficient to rebut that showing. *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thus, "in order to state a claim under *Zadvydas*, the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*.

Applied here, Hernandez satisfies the initial temporal requirement. ICE took him into custody nearly eight months ago. Because the six-month period for presumptively reasonable detention has expired, *Zadvydas*'s burden-shifting framework applies. Hernandez has carried his initial burden by showing a good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. He does so by pointing to a stubborn diplomatic reality: he is a citizen of Cuba, and Cuba is currently embroiled in political conflict with the United States. As his petition details, the Cuban government is not issuing travel documents and has a history of refusing returnees. (*See* Doc. 1-1.) Indeed, the Government has had nearly six years to deport Hernandez, and it has failed. This is more than enough reason to believe his removal is nowhere in sight.

The burden thus shifts to the Government to rebut Hernandez's showing, but they fail to do so. *Akinwale*, 287 F.3d at 1052. This outcome should come as no surprise—the Government offers no documents, no diplomatic agreements, and no concrete evidence that Hernandez will be removed in the near future. (Doc. 15 at 7.) Instead, the Government extends hope and a placeholder. It relays an assertion from ICE that the agency is working towards executing a third-country removal to Mexico. The Government readily admits it has not a single document to support this representation, but promises to file the paperwork if it ever materializes. (*Id.* at 7.) That is not how a burden of proof works. A mere representation from an agency to its lawyers—unbacked by a shred of evidence—cannot justify keeping a man locked in a cell. Because the Government offers nothing to suggest removal to Mexico, or anywhere else, is more likely now than it was in 2020, Hernandez must be released.

It is easy to see why this outcome might cause unease. Hernandez is a convicted child abuser. Yet, because the Government is completely unable to effectuate his removal, he has been allowed to live in this country for nearly two decades without facing the ultimate immigration consequence. But this Court is bound by the law. And the law is clear: the Government cannot lock individuals in a cell indefinitely as a workaround for a stalled deportation process, nor can it use indefinite detention simply to placate popular opinion.

*Zadvydas*, 533 U.S. at 659. The Constitution cannot be ignored just because the facts are frustrating. If there is a flaw in a system that leaves convicted criminals in a state of perpetual immigration limbo, the remedy lies in the halls of Congress or with the Executive branch—not with a federal judge.

### IV. Conclusion

Because the Government cannot show any real prospect of deportation, the Court finds no significant likelihood that Hernandez will be removed in the reasonably foreseeable future. He is therefore entitled to release from ICE custody under *Zadvydas*. But that release is not a free pass—he remains subject to the strict conditions of his Order of Supervision. Accordingly, it is **ORDERED**:

1. The Verified Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**.[2]

2. Respondents shall **RELEASE** Hernandez within 24 hours of this Order, and they shall facilitate his transportation from the detention facility by notifying his counsel when and where he can be collected.

3. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

---

[2] Hernandez's request for fees and costs under the Equal Access to Justice Act (Doc. 1-1 at 11) must be filed separately under Local Rule 7.01.

**ENTERED** in Fort Myers, Florida on March 24, 2026.

Kyle C. Dudek
United States District Judge